**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

SHAWN I. LAINFIESTA,

                                        Plaintiff,

         v.                                                         No. 11-CV-1099
                                                                         (NAM/CFH)

LIVERMORE, Block Sergeant,
Great Meadow Correctional Facility;
BERNARD WHITTIER, Correction Officer,
Great Meadow Correctional Facility,

                                        Defendants.[1]

_____

**APPEARANCES:**                              **OF COUNSEL:**

SHAWN I. LAINFIESTA
Plaintiff Pro Se
95-A-2531
Eastern New York Correctional Facility
Box 338
Napanoch, New York 12458

HON. ERIC T. SCHNEIDERMAN                   JAMES SEAMAN, ESQ.
Attorney General for the                    Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[2]

         Plaintiff pro se Shawn I. Lainfiesta ("Lainfiesta"), an inmate currently in the custody of

_____

         [1]  By letter dated March 28, 2012, Lainfiesta advised the Court that "John Doe"
would no longer be named a defendant in the action.  Dkt. No. 17.  By Text Order, John
Doe was dismissed without prejudice from this action.  Text Order dated 07/18/2012.

         [2]  This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

the New York State Department of Correctional and Community Supervision ("DOCCS"),

brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, two DOCCS

employees, violated his constitutional rights under the Eighth and Fourteenth Amendments.

Compl. (Dkt. No. 1).  Presently pending is defendants' motion for summary judgment

pursuant to Fed. R. Civ. P. Rule 56.  Dkt. No. 28.  Lainfiesta opposes the motion.  Dkt. No.

33.  For the reasons which follow, it is recommended that defendants' motion be granted in

part and denied in part.

## I.  Background

The facts are related herein in the light most favorable to Lainfiesta as the non-moving

party.  See subsection II(A) infra.  At all relevant times, Lainfiesta was an inmate at Great

Meadow Correctional Facility ("Great Meadow").

## A.  Excessive Force

On December 5, 2010, defendant Sergeant Livermore stopped Lainfiesta for a random

pat-frisk while Lainfiesta was walking to the messhall for breakfast.[3]  Compl. ¶ 9; Lainfiesta

Dep. (Dkt. No. 28-2) at 45:4–18, 62:8–16.  Livermore then took Lainfiesta to an interview

---

[3]  To the extent that Lainfiesta attempted to allege an Eighth Amendment claim based on this pat-frisk, such an allegation does not involve harm rising to the level of a constitutional violation.  The Eighth Amendment protects an inmate from "cruel and unusual punishment" where the inmate has suffered a sufficiently serious deprivation. U.S. CONST. amend. VIII; Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Lainfiesta does not allege that this pat-frisk caused him any injury.  Montero v. Crusie, 153 F. Supp. 2d 368, 375 (S.D.N.Y. 2001).  As such, Lainfiesta does not present a sufficiently serious deprivation making out a colorable Eighth Amendment claim.  Id.  Accordingly, Lainfiesta's potential Eighth Amendment claim based on this pat-frisk is without merit.

room.  Compl. ¶ 9; Lainfiesta Dep. at 88:85–106:8.  As soon as Lainfiesta was escorted to the interview room, Lainfiesta's face was shoved against a wall while his handcuffs were removed.  Lainfiesta Dep. at 45:24–46:4.  Lainfiesta's hands were dragged and placed above his head.  Id. at 46:4–6.  Livermore proceeded to punch Lainfiesta both in the back and the sides of the upper body, which Lainfiesta estimated to have lasted one to two minutes, consisting of eight to ten punches.  Id. at 46:11–17, 88:5–89:9, 106:18–21.  Lainfiesta then heard a voice ordering him to remain on the wall and another officer instructed him to remove his clothes.  Id. at 46:17–25.

During this time, Livermore told Lainfiesta that he should be more cooperative or he would be regularly pat-frisked.  Lainfiesta Dep. at 47:7–10.  Livermore asked Lainfiesta if Lainfiesta understood what Livermore meant, to which Lainfiesta replied, "I heard what you said."  Id. at 47:14–15.  Livermore responded, "I said did you understand what I said?"  Id. at 47:19–20.  Lainfiesta repeated his previous answer.  Id. at 47:21–22.  After this verbal exchange, Lainfiesta felt more punches in the back and on the sides of his upper body, including the spinal column.  Id. at 47:21–48:23.  According to Lainfiesta, this second round of punches involved Whittier and the other correction officer, lasted slightly longer than the first round, and consisted of a dozen punches.  Id. at 99:16–100:5, 105:18–24.

Lainfiesta was again told to remove his clothes and inadvertently dropped a sock on the floor.  Lainfiesta Dep. at 48:24–49:3–5.  A third round of punches ensued involving the two officers, which included a blow to the head.  Id. at 50:2–15, 105:18–24.  An officer began to choke Lainfiesta, stating, "one more act like that and [you'll] would be heading to the hospital . . . ."  Id. at 50:16–20, 106:6–8.  Lainfiesta testified that the third round of punches lasted slightly longer than the second round and the overall experience was more violent.

3

Id. at 106:3–4.

After the assault, Lainfiesta was ordered to get dressed.  Lainfiesta Dep. at 50:22.
Lainfiesta asked Livermore for medical attention, to which Livermore replied, "what for[?]"
Id. at 50:23–51:2.  Lainfiesta said that he was injured and Livermore replied that "nothing
had occurred that would warrant medical attention."  Id. at 51:2–6; Compl. ¶ 10.  Lainfiesta
testified that he did not know Livermore or Whittier prior to the December 5 assault.
Lainfiesta Dep. at 62:17–23, 63:5–9.

Defendants provide a competing account of the incident.  According to Whittier, he was
conducting a routine random pat-frisk on Lainfiesta when he felt something in the groin area
of Lainfiesta's pants.  Whittier Decl. (Dkt. No. 28-11) ¶¶ 3, 5; Dkt. No. 28-12.  Whittier
informed Livermore of what happened and Lainfiesta was escorted to an interview room.[4]
Whittier Decl. ¶¶ 5–6; Livermore Decl. (Dkt. No. 28-8) ¶ 8; Dkt. Nos. 28-9, 28-12.  In the
interview room, Whittier conducted a more thorough frisk of Lainfiesta with Livermore
supervising and non-party Correction Officer Saunders acting as back up in the event
Lainfiesta carried a concealed weapon.  Livermore Decl. ¶¶ 8–9; Saunders Decl. ¶ 8.
Lainfiesta was ordered to remove his pants.  Livermore Decl. ¶ 10; Dkt. Nos. 28-9, 28-12.
At this point, defendants discovered that Lainfiesta had sewn pockets into his thermal long
johns.  Livermore Decl. ¶ 10; Whittier Decl. ¶ 10; Dkt. Nos. 28-9, 28-12.  Lainfiesta refused
to explain to defendants why he had the sewn pockets.  Dkt. No. 28-12.  Lainfiesta's
undershorts were not removed during the frisk but his groin and buttocks areas were
scanned using a hand scanner.  Livermore Decl. ¶ 11; Whittier Decl. ¶¶ 7, 9; Dkt. No. 28-9.

_____

[4]  According to non-party Correction Officer Saunders, officers do not direct inmates
to remove their clothing during a frisk while in the hallway.  Saunders Decl. (Dkt. No. 28-
13) ¶ 7.  As such, Lainfiesta was escorted to an interview room instead.  Id.

4

No contraband was found on Lainfiesta. Livermore Decl. ¶ 11; Whittier Decl. ¶¶ 10–11.

Whittier completed the frisk, confiscated the thermal underwear, and ordered Lainfiesta to get dressed. Livermore Decl. ¶ 11. Whittier authored a misbehavior report, charging Lainfiesta with altering an item and altering personal property without authorization. Id. ¶ 11; Whittier Decl. ¶ 16. By a grievance dated December 6, 2010, Lainfiesta complained about the excessive force incident. Dkt. No. 33 at 24. Non-party Lieutenant Goodman investigated and interviewed Lainfiesta about the grievance. Dkt. No. 28-10. Goodman concluded that the grievance was filed in retaliation for a misbehavior report submitted by Whittier against Lainfiesta and that the staff acted within the scope of their responsibilities. Id. According to Livermore and Whittier, they did not know Lainfiesta prior to December 5, 2010. Livermore Decl. (Dkt. No. 28-8) ¶ 2; Whittier Decl. ¶ 4.


### B. Medical Indifference

After the assault, Lainfiesta requested medical attention. Compl. ¶ 10. Based on his research using books available in prison, Lainfiesta believes that the assault caused him to suffer from a bruised kidney, a bruised lower spinal column, a fractured or broken rib, a sore throat from being choked, back pain, and a headache. Id. ¶ 10; Lainfiesta Dep. at 89:20–90:7, 155:6–158:7. Lainfiesta believed that he had a kidney injury because at the time, his feces were slightly green in color. Lainfiesta Dep. at 155:6–13.

Lainfiesta claims that Livermore instructed officers who worked on Lainfiesta's cell-block to prevent Lainfiesta from going to sick-call. Compl. ¶ 10. Lainfiesta repeatedly filled out sick call request slips and submitted them in a drop box or asked other people to submit them for him when he was in keeplock. Lainfiesta Dep. at 53:5–10. Around a week after

the assault incident, on December 13, 2010, Goodman interviewed and sent Lainfiesta to see medical personnel for medical care.[5]  Id. at 54:5–55:4.  Lainfiesta heard medical personnel advising an unnamed sergeant, who escorted Lainfiesta to the clinic, that "[Lainfiesta] is injured."  Compl. ¶ 11.  Despite that statement, Lainfiesta was neither treated for his injuries nor permitted to visit medical personnel through the sick-call request procedure.  Id.  Lainfiesta maintains the only time he visited medical personnel to treat his assault-related injuries was on December 13, 2010.  Lainfiesta Resp. to Defs.' Statement of Material Facts (Dkt. No. 33) ¶ 4.

Non-party Nesmith, a physician's assistant at Great Meadow, authored an inmate injury report on December 13, 2010, which notes Lainfiesta's use of force allegations and claimed injury to the right side of the torso.  Dkt. No. 29; Nesmith Decl. (Dkt. No. 28-7) ¶ 1.  Nesmith attested that Lainfiesta did not have ecchymosis,[6] erythema,[7] any tenderness to the tissue upon palpation,[8] or positive findings indicating an injury.  Nesmith Decl. ¶¶ 13–15.  As a

_____

[5]  Lainfiesta testified that when Goodman left the room, an unnamed officer came in and threatened Lainfiesta.  Lainfiesta Dep. at 55:9–15.  Construing Lainfiesta's allegations liberally, Lainfiesta was attempting to allege a potential Eighth Amendment claim against the unnamed officer.  However, verbal threats alone are not sufficiently serious to implicate a constitutional violation.  Mateo v. Fischer, 682 F. Supp. 2d 423, 432 (S.D.N.Y. 2010) (collecting cases).  Lainfiesta does not make further allegations against the unnamed officer.  Therefore, Lainfiesta has failed to allege an Eighth Amendment claim against the unnamed officer based on mere threats alone.

[6]  Ecchymosis is "a small hemorrhagic spot . . . in the skin or mucous membrane forming a nonelevated, rounded or irregular, blue or purplish patch."  DORLAND'S ILLUSTRATED MED. DICTIONARY 524 (28th ed. 1994) [hereinafter "DORLAND'S"].

[7]  Erythema is "a name applied to redness of the skin produced by congestion of the capillaries, which may result from a variety of causes[.]" Id. at 576.

[8]  Palpation is "the act of feeling with the hand" or "the application of the fingers with light pressure to the surface of the body . . . ."  Id. at 1217.

precaution, Nesmith ordered an X-ray to be conducted.  Id. ¶16.  Nesmith conducted a "wet read" of the X-ray to determine if there were any medical issues he could promptly address.[9]  Id. ¶ 17.  Nesmith concluded that the X-ray was negative for any fracture, which was confirmed by the radiologist's reading.[10]  Lainfiesta's Eastern New York Correctional Facility ("Eastern N.Y.") medical records show no other evidence relating to the December 5 assault incident.  See Dkt. No. 29-1.

Because Nesmith did not find that Lainfiesta suffered any injuries, Nesmith did not prescribe any treatment.  Nesmith Decl. ¶ 19.  Had Lainfiesta been hit in his lower back and kidney area approximately ten times during each of three rounds of punches, Nesmith would have seen ecchymosis or redness eight days after the assault.  Id. ¶¶ 20–21.

According to Livermore, security staff do not carry keys to medical drop boxes.  Livermore Decl. ¶ 19.  Instead, the midnight nursing staff unlock and open the boxes and retrieve sick-call slips at that time.  Id.; Nesmith Decl. ¶ 24.  Inmates are typically seen by a nurse the following day.  Nesmith Decl. ¶ 24.  Inmates can tell officers on their housing units about their medical problems if they need to be seen more quickly.  Id. ¶ 25.  Further, there are nurses on each housing block several times a day and inmates routinely tell those nurses about their medical problems.  Livermore Decl. ¶ 18.

By a grievance dated December 10, 2010, Lainfiesta complained of denied medical care for assault-related injuries.  Dkt. No. 33 at 25.  Lainfiesta again complained of denied medical care by a grievance dated December 27, 2010.  Id. at 26.

_____

[9]  A "wet read" is an examination of an X-ray before it is sent out for a formal reading by a radiologist.  Nesmith Decl. ¶ 17.

[10]  The radiologist's report concluded that Lainfiesta's X-ray had "no evidence for fracture or other bony abnormality to the right rib cage."  Dkt. No. 29-1 at 6.

### C.  Keep-Lock Confinement

Livermore instructed Whittier to place Lainfiesta in keeplock confinement.[11]  Compl. ¶ 10.  Lainfiesta claims the pretext for placing him in keeplock was that Lainfiesta wore thermal long johns.  Id.  Lainfiesta explained he had patches in the knee areas of his long johns because there were holes there, which made it difficult to keep warm during the winter.  Lainfiesta Dep. at 51:10–13, 121:21–122:6.  Defendants explained that Lainfiesta was ordered to be placed under keeplock supervision because Lainfiesta violated prison rules against altering items and tampering with property as a way to conceal contraband.  Livermore Decl. ¶ 13; Whittier Decl. ¶¶ 12, 14.

Lainfiesta testified that he did not attend the hearing related to his keeplock confinement because he thought his presence would not make a difference to the outcome.  Lainfiesta Dep. at 136:12–22.  Lainfiesta was in keeplock for three days.  Id. at 136:24–25.


### D.  Conspiracy

Lainfiesta claims that from 1999 to 2000, he witnessed correctional personnel committing fraudulent actions in the guise of an inmate boycott.  Compl. ¶ 1.  Lainfiesta explained that the boycott was instigated to generate disruptive inmates in order to fill capacity at a new facility at the time, which was Upstate, where there is a Special Housing Unit ("SHU").[12]  Lainfiesta Dep. at 132:9–22.  Lainfiesta commented on the fraudulent

---

[11]  "Keeplock" is a form of disciplinary confinement where an inmate is confined in his cell for the duration of the disciplinary sanction.  Gittens v. Lefevre, 891 F.2d 38, 39 (2d Cir. 1989) (citing N.Y. COMP. CODES R. & REGS. tit. 7, § 251-1.6 (2012)).

[12]  SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. COMP. CODES R. & REGS. tit 7, § 300.2(b).  Inmates are confined in a

actions to unnamed persons, and as a result, non-party former Commissioner Goord transferred Lainfiesta to Upstate Correctional Facility ("Upstate") to determine Lainfiesta's level of knowledge on the alleged fraudulent actions.  Compl. ¶ 2.  Because Lainfiesta was determined to be a threat, Goord transferred Lainfiesta to Attica Correctional Facility ("Attica").  Id. ¶ 3.  Lainfiesta was "persecuted" for four years at Attica, the details of which were not alleged.  Id.

During the third quarter of 2004, an inmate was killed at Attica and Lainfiesta alleged that the way the inmate was killed was intended for Lainfiesta.  Compl. ¶ 5.  Lainfiesta further alleged that the deceased inmate was clubbed in the head by security officers after the inmate assaulted staff with a weapon.  Id. ¶ 5 n. 1.  Lainfiesta perceives this incident as having served the basis for transferring him to Coxackie Correctional Facility ("Coxackie"). Id. ¶ 5.  Lainfiesta was persecuted by security personnel at Coxackie for five years.  Id. ¶ 6.

In February 2010, Lainfiesta was transferred to Great Meadow after administrators learned that Lainfiesta intended to file a civil rights action, presumably about the facility transfers and continued persecution.[13]  Compl. ¶ 7.  Lainfiesta continued to be persecuted

---

SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

[13]  To the extent that Lainfiesta was attempting to allege a potential First Amendment retaliation claim based on a facility transfer, such a claim must fail.  To state an actionable claim for retaliation, a prisoner must establish by a preponderance of the evidence that:  (1) the speech or conduct at issue was protected; (2) the defendant took adverse action against the plaintiff; and (3) there was a causal connection between the protected speech and the adverse action.  Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks and citation omitted); Tafari v. McCarthy, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010).  Here, the filing of lawsuits is a constitutionally protected activity.  Graham, 89 F.3d at 80.  However, despite Lainfiesta's conclusory allegations, Lainfiesta failed to allege and substantiate how the facility transfer adversely affected his prison conditions and his intention to file suit served as the impetus for the transfer.  Therefore, Lainfiesta's potential retaliation claim must fail as a matter of law.

during his one-year stay at Great Meadow.  Id. ¶ 8.

Lainfiesta was harassed by security personnel using similar tactics at Attica, Coxsackie, Great Meadow, and Eastern N.Y.  Compl. ¶¶ 8 n. 4, 12.  Lainfiesta explained that he was first placed in housing units with inmate agents.  Compl. ¶ 8 n. 4.  Security personnel then "falsely vilify Lainfiesta to such inmate agents and to other staff members."  Id.  The inmate agents create lies to instigate other inmates against Lainfiesta.  Id.  Security personnel then stage incidents, often using inmate agents, to disrespect Lainfiesta and draw out misconduct on Lainfiesta's part.  Id.  This created situations where disciplinary actions would be taken against Lainfiesta.  Id.

On February 24, 2011, Lainfiesta was transferred from Great Meadow to Eastern N.Y.  Compl. ¶ 12.  At Eastern N.Y., security personnel are continuing to "neutralize" Lainfiesta by "converting him into an inmate agent . . . in a projected legitimate fashion . . . ."  Id.

## II. Discussion

Lainfiesta contends that (1) defendants Livermore and Whittier used excessive force against him when they assaulted on December 5, 2010, (2) Livermore exhibited deliberate indifference to his medical needs by denying him access to medical care, and (3) Livermore and Whittier denied him procedural due process by placing him in keeplock.  Lainfiesta also contends that he is victim to an inter-facility conspiracy.  Defendants contend that Lainfiesta's complaint should be dismissed because (1) Lainfiesta's excessive force allegations are unsubstantiated and (2) his medical indifference and conspiracy claims are without merit.

10

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223–24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also

11

> indicated that we cannot read into pro se submissions claims
> that are not "consistent" with the pro se litigant's allegations, . . .
> or arguments that the submissions themselves do not "suggest,"
> . . . that we should not "excuse frivolous or vexatious filings by
> pro se litigants," . . . and that pro se status "does not exempt a
> party from compliance with relevant rules of procedural and
> substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247–48.

### B. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

12

**1. Excessive Force**

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983. <u>Hudson v. McMillian</u>, 503 U.S. 1, 9–10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976); <u>Sims v. Artuz</u>, 230 F.3d 14, 20 (2d Cir. 2000). To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. <u>Blyden v. Mancusi</u>, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." <u>Hudson</u>, 503 U.S. at 9 (internal citations omitted); <u>Blyden</u>, 186 F.3d at 262. However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation <u>per se</u>" regardless of the seriousness of the injuries. <u>Blyden</u>, 186 F.3d at 263 (citing <u>Hudson</u>, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition <u>de minimis</u> uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." <u>Hudson</u>, 503 U.S. at 9–10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" <u>Sims</u>, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." <u>Sims</u>, 230 F.3d at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" <u>Id.</u> (quoting

<u>Hudson</u>, 503 U.S. at 7).  In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider:  "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response."  <u>Scott v. Coughlin</u>, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

Defendants contend that Lainfiesta's claims are insufficient to establish an Eighth Amendment violation because they are unsubstantiated and the record is devoid of any assault-related injuries suffered by Lainfiesta.  Lainfiesta contends that defendants used excessive force against him during three rounds of punches even though he did not resist and was compliant during a pat-frisk.  Specifically, for the first round of assault, Livermore repeatedly punched Lainfiesta as Lainfiesta was held up against a wall.  For the second round of assault, Whittier and another officer repeatedly punched Lainfiesta after Lainfiesta simply replied he heard what Livermore asked of him.  Finally, Lainfiesta received a third round of punches from Whittier and another officer because Lainfiesta inadvertently dropped a sock on the floor.  Despite Lainfiesta's compliance with the pat-frisk, he was punched for an estimated total of three to six minutes in the back, upper torso, and the head.  While medical records do not confirm the injuries which Lainfiesta contends to have incurred, any or no injuries resulting from the events as described by Lainfiesta could represent a <u>per se</u> constitutional violation.  <u>See</u> <u>Baskerville v. Mulvaney</u>, 411 F.3d 45, 48–49 (2d Cir. 2005).

As for the subjective prong of the test, defendants fail to show the absence of a genuine

issue of material fact.  Although it is undisputed that defendants were tasked with maintaining the safety and order of inmates, and Lainfiesta had indeed sewn patches into his thermal long johns, defendants did not find any contraband on Lainfiesta's person. Further, Lainfiesta alleged the assault was unprovoked and nothing in the record indicates that Lainfiesta behaved in any threatening manner posing a danger to officers or other inmates.  Therefore, Lainfiesta's contentions that he was punched for three rounds in the back, torso, and head were disproportionate to the amount of force required.

This competing evidence rests on the credibility of Lainfiesta on the one hand and defendants on the other.  In these circumstances, the governing law that the evidence must be viewed in the light most favorable to the non-moving party, leaves no choice but to credit Lainfiesta's version of events for purposes of this motion.  See In re Dana Corp., 574 F.3d 128, 152 (2d Cir. 2009) (holding that a court faced with a motion for summary judgment must draw all reasonable inferences in favor of the non-moving party and may not make credibility determinations or weigh the evidence, functions which are reserved to a jury and not a judge) (citing cases).

Lainfiesta's evidence would establish that the use of force was an unnecessary tactic implemented not to restore or maintain order, but to maliciously assault an inmate for no apparent reason.  Moreover, such actions in assaulting this inmate could constitute a per se constitutional violation.  Thus, viewing the facts in the light most favorable to Lainfiesta, he has proffered sufficient evidence to raise genuine issues of material fact as to the objective prong of the Eighth Amendment analysis.  Furthermore, if Lainfiesta's evidence is credited, a reasonable factfinder could find the actions of Livermore and Whittier wanton and malicious.  The need for force in response to compliant and non-threatening behavior could

15

be deemed malicious.  This conduct could be found unreasonable and unnecessary to sustain institutional order and safety.  Thus, such actions, as alleged by Lainfiesta, raise a question of material fact as to the subjective prong of the Eighth Amendment analysis.

Accordingly, defendants' motion on this ground should be denied.


### 2.  Medical Indifference

The Eighth Amendment prohibition against the infliction of "cruel and unusual punishment" extends to the provision of medical care.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  "'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Since there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162–63 (2d Cir. 2003) (citing Chance, 143 F.3d 698, 702 (2d Cir. 1998)).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  Chance, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104 (1976).

"Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. <u>Chance</u>, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." <u>Sonds v. St. Barnabas Hosp. Corr. Health Servs.</u>, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Lainfiesta claims that Livermore denied him access to medical care after the assault as well as instructed other officers to prevent him from meaningfully utilize the sick-call procedures. Here, Lainfiesta has established the objective prong to the medical indifference analysis. Lainfiesta made repeated requests for medical care and attention, both to Livermore and through the prison grievance system. Lainfiesta's complaints caused Goodman to issue him a clinic pass for obtaining a medical examination. Crediting Lainfiesta's repeated requests for medical attention as he perceived his medical need was worthy of comment, Lainfiesta has proffered sufficient evidence to raise an issue of fact as to the objective prong of the Eighth Amendment analysis to require resolution by a jury. <u>Brock</u>, 315 F.3d at 162–63.

Lainfiesta has also presented a genuine issue of fact with respect to the subjective prong of the test. Livermore had knowledge of Lainfiesta's medical need for Lainfiesta verbally informed him of such. <u>Chance</u>, 143 F.3d at 702. Lainfiesta further contends that Livermore instructed officers on his cell-block to prevent Lainfiesta from attending sick-call; thus, intentionally delaying Lainfiesta's access to medical attention. <u>Estelle</u>, 429 U.S. at 104. Even though Lainfiesta eventually saw Nesmith eight days after the alleged assault, this was the result not of Livermore's doing but of Goodman as part of the grievance process commenced by Lainfiesta. There is nothing in the record indicating that Livermore

did not deny Lainfiesta medical care.  Further, the absence of sick-call entries does not vitiate against claims of continuing medical need or deliberate indifference since part of Lainfiesta's claim is that Livermore prevented him from obtaining medical care through sick-call procedures.  As such, defendants' emphasis on the number of options for Lainfiesta to obtain medical care is irrelevant.  Therefore, Lainfiesta has shown that factual issues exist with respect to the subjective prong of his medical indifference claim.

Accordingly, defendants' motion on this ground should be denied.


### C.  Fourteenth Amendment

Lainfiesta contends that his procedural due process rights under the Fourteenth Amendment were violated when a false misbehavior report issued against him resulted in his keeplock confinement.  This Court addresses Lainfiesta's Fourteenth Amendment claims <u>sua</u> <u>sponte</u>.

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. CONST. amend. XIV § 1.  It is important to emphasize that due process "does not protect against all deprivations of liberty.  It protects only against deprivations of liberty accomplished without due process of the law."  <u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979) (internal quotation and citations omitted).  "A liberty interest may arise from the Constitution itself, . . . or it may arise from an expectation or interest created by state laws or policies."  <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005) (citations omitted).

### 1. Liberty Interest

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483–84 (1995). This standard requires a prisoner to establish that the deprivation was atypical and significant in relation to ordinary prison life. Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).

The fact that an inmate has been disciplined with segregated confinement alone is insufficient to establish an atypical and significant deprivation. "Both the conditions and [the] duration [of the confinement] must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." Sealey v. Giltner, 197 F.3d 578, 586 (2d Cir. 1999). Framed in more concrete terms, the Second Circuit has held that "[where] the plaintiff was confined for an intermediate duration—between 101 and 305 days—'development of a detailed record' of conditions of the confinement relative to ordinary prison conditions is required." Palmer v. Richards, 364 F.3d 60, 64–65 (2d Cir. 2004). "In the absence of a detailed factual record, [the Second Circuit has] affirmed dismissal of due process claims only in cases where the period of time spent in [confinement] was exceedingly short—less than the 30 days . . . [with] no indication that the plaintiff endured unusual [confinement] conditions." Id. at 65–66.

In this case, Lainfiesta has failed to establish a liberty interest as he was not subjected to atypical and significant deprivation in relation to ordinary prison life. Sandin, 515 U.S. at

484. Lainfiesta testified that he was confined in keeplock for three days. Because this period of confinement was in keeplock, a lesser form of SHU confinement, is well under thirty days, and the record does not indicate that Lainfiesta endured any sort of unusual confinement conditions, Lainfiesta does not show that he suffered from atypical and significant hardship. Palmer, 364 F.3d at 65–66; see also McAllister v. Zydel, 929 F. Supp. 102, 103–04 (W.D.N.Y. 1996) (fifteen days in keeplock did not implicate a liberty interest); Schmelzer v. Norfleet, 903 F. Supp. 632, 634–35 (S.D.N.Y. 1995) (eleven days in keeplock did not constitute atypical and significant hardship). As such, Lainfiesta has failed to establish the existence of a protected interest in life, liberty, or property for his Fourteenth Amendment claims. Perry, 280 F.3d at 173.

## 2. Procedural Due Process

Lainfiesta raises a procedural due process claim based on his keeplock confinement. "Procedural due process claims concern the adequacy of the procedures provided by the governmental body for the protection of liberty or property rights of an individual." Gordon v. Nicoletti, 84 F. Supp. 2d 304, 308 (D. Conn. 2000). However, to state a claim for procedural due process, there must first be a substantive due process interest which requires protection. See generally Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994) ("[P]rocedural due process questions [are analyzed] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.") (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). First, as previously discussed, Lainfiesta failed to establish a protected interest in

life, liberty, or property, which is required for a procedural due process claim.  Id.  Thus,

Lainfiesta's procedural due process claim must fail.  Moreover,

> [u]nder ordinary circumstances, when an inmate voluntarily
> waives his appearance before a disciplinary hearing officer, he
> cannot then attack the adjudication as violative of his
> constitutional rights.  An inmate's refusal to attend a disciplinary
> hearing waives his due process objections . . . only when it
> occurs through no fault of prison officials.

Tafari v. McCarthy, 714 F. Supp. 2d 317, 380 (N.D.N.Y. 2010) (internal quotation marks and

citation omitted).  Thus, to the extent that Lainfiesta alleged his absence from the

disciplinary hearing violated his due process rights, such a claim must also fail because he

testified that he voluntarily waived his appearance.  Moreover, there is no record evidence

indicating that defendants prevented Lainfiesta from attending the hearing and Lainfiesta

does not contend the contrary.  Thus, "[Lainfiesta's] claim that his absence from the hearing

violated his right to due process" cannot stand.  Tafari, 714 F. Supp. 2d at 380.

Accordingly, Lainfiesta's procedural due process claim should be dismissed.


### 2.  False Misbehavior Report

An inmate has a right not to be deprived of a liberty interest without due process.

However, a "prison inmate has no constitutionally guaranteed immunity from being falsely

or wrongly accused of conduct which may result in the deprivation of a protected liberty

interest."  Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)).  "There must be more,

such as retaliation against the prisoner for exercising a constitutional right."  Boddie v.

Schnieder, 105 F.3d 857, 862 (2d Cir.1997) (citing Franco v. Kelly, 854 F.2d 584, 588–90

(2d Cir. 1988)).  Here, Lainfiesta contends that the misbehavior report filed against him for

altering personal property was false, presumably authored as part of a larger conspiracy perpetrated against him by defendants. However, Lainfiesta conceded to altering his thermal long johns by sewing patches over the knee areas. Thus, record evidence does not support Lainfiesta's assertion that the report was false. Further, as discussed infra, Lainfiesta's conspirarcy claim is without merit. Therefore, any Fourteenth Amendment challenge based on the alleged falsity of the misbehavior report at issue is without merit.

Accordingly, Lainfiesta's claim based on a false misbehavior report should be dismissed.


### D. Conspiracy[14]

In order to support a claim for conspiracy under §§ 1983 or 1985, there must be "(1) an agreement . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002); Cusamano v. Sobek, 604 F. Supp. 2d 416, 468 (N.D.N.Y. 2009). An agreement must be proven with specificity as bare allegations of a conspiracy supported only by allegations of conduct easily explained as individual action is insufficient. See Iqbal v. Hasty, 490 F.3d 143,177 (2d Cir. 2007); see also Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir.1999). Thus, plaintiffs must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." Warren v. Fischl, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations

---

[14] Defendants also assert that any conspiracy claims are effectively barred by the intra-corporate conspiracy doctrine. However, because it is recommended herein that defendants' motions as to the conspiracy claim be granted on other grounds, their motion based on the intra-corporate conspiracy doctrine need not be addressed.

omitted).  While exact specifics are not required, "the pleadings must present facts tending to show agreement and concerted action."  <u>Anilao v. Spota</u>, 774 F. Supp. 2d 457, 512–13 (E.D.N.Y. 2011) (citations omitted).  Conclusory, vague, and general allegations are insufficient to support a conspiracy claim.  <u>Ciambriello</u>, 292 F.3d at 325.

Here, Lainfiesta failed to provide evidence sufficient to support a viable conspiracy claim between defendants Livermore and Whittier in their alleged excessive force and denials of due process claims.[15]  Lainfiesta's claims of conspiracy are solely conclusory.  There is nothing in the record to establish that these defendants had any type of agreement between them.  There were no allegations outlining with specificity when, why, or how this alleged conspiracy occurred.

Likewise, Lainfiesta also failed to provide evidence sufficient to support a viable conspiracy claim between DOCCS employees working at Upstate, Attica, Coxackie, Great Meadow, and Eastern N.Y. in their alleged (1) retaliatory facility transfers, (2) attempts to silent or eliminate Lainfiesta, and (3) plans to provoke Lainfiesta into carrying out misconduct.  All of these claims are conclusory.  While Lainfiesta provided general time frames for when some of these claims occurred[16] and sequential steps involved in this

---

[15]  In his memorandum of law in response to defendants' motion, Lainfiesta states that he does not assert a conspiracy claim.  Lainfiesta Mem. of Law (Dkt. No. 33) at 17.  Lainfiesta claims that despite the continuing conspiracy against him, any statements he made concerning the conspiracy were to place the assault incident in context.  <u>Id.</u>  However, in several letters submitted to the Court, Lainfiesta claims he remains the target of a conspiracy between DOCCS and its employees.  <u>See, e.g.</u>, Dkt. Nos. 35, 36, 38.  To resolve such inconsistencies, this Court addresses the conspiracy claim as alleged in Lainfiesta's complaint.

[16]  For example:  Lainfiesta believed that he was targeted to be killed the same way as another inmate was killed in 2004, Compl. ¶ 5 n. 1; Lainfiesta was transferred to Great Meadow in February 2010, <u>id.</u> ¶¶ 7–8; Lainfiesta was transferred to Eastern N.Y. in February 24, 2011, although the transfer was his choice, <u>id.</u> ¶¶ 5 n. 2, 12.

conspiracy, Lainfiesta fails "to adduce record evidence establishing either (1) a meeting of the minds between any of these [unnamed non-d]efendants to act in concert to inflict a constitutional injury on [Lainfiesta], or (2) the commission of any overt act in furtherance of that goal." Cusamano, 604 F. Supp. 2d at 432. Even though specifics are unnecessary, Lainfiesta fails to provide any plausible information which would lend credence to his claims of an explicit or implicit agreement between any or all of the unnamed DOCCS employees.

Accordingly, defendants' motion on this ground should be granted.

### III. Conclusion

For the reasons stated above, it is hereby:

1. **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 28) be:

    A. **GRANTED** as to Lainfiesta's conspiracy claim; AND

    B. **DENIED** as to Lainfiesta's Eighth Amendment (1) excessive force claims against defendants Livermore and Whittier; (2) medical indifference claim against defendant Livermore; AND

2. Further **RECOMMENDED** that Lainfiesta's Fourteenth Amendment claims be dismissed from this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: May 9, 2013
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge